IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARRETT'S WORLDWIDE ENTERPRISES,
LLC, AND ERIC GARRETT,,

        Plaintiffs,

        vs.                  Case No. 14-2281-JTM

UNITED STATES OF AMERICA, DEPARTMENT
OF TRANSPORTATION, PIPELINE AND
HAZARDOUS MATERIALS SAFETY
ADMINISTRATION, THEODORE TURNER, III,
TERRY POLLARD, AND EDWARD RASTETTER

        Defendants.

MEMORANDUM AND ORDER

Plaintiffs Eric Garrett and Garrett's Worldwide Enterprises (GWE) produce and ship fireworks, a highly-regulated activity. The United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) conducted two inspections of GWE. Alleging that the inspections were groundless actions designed to retaliate against Garrett for his criticism of the agency, the plaintiffs instituted this action against the federal government under the Federal Tort Claims Act, alleging entrapment, negligence, abuse of process, outrage, unlawful search, First Amendment violations, cruel and unusual punishment, and malicious prosecution. The plaintiffs also advance *Bivens*

claims against DOT agents Theodore Turner, III, Terry Pollard, and Edward Rastetter.

The government, alleging that the present civil action is simply a device to circumvent the administrative review of potential violations discovered during the inspections, has moved to dismiss the action pursuant to Fed.R.Civ.Pr. 12(b)(1) for a lack of subject matter jurisdiction. For the reasons provided herein, the court hereby grants the defendants' motion.

The Secretary of Transportation is empowered to regulate hazardous materials by the Federal Hazardous Materials Transportation Law, 49 U.S.C. § 5103(a)-(b). Federal law further authorizes the Secretary to "investigate, conduct tests, make reports, issue subpoenas, conduct hearings, require the production of records and property, take depositions, and conduct research, development, demonstration, and training activities." 49 U.S.C. § 5121(a). The Secretary has in turn delegated these authorities to the PHMSA and its Administrator. 49 C.F.R. §§ 1.96, 1.97.

PHMSA has promulgated rules governing the transportation of fireworks. *See* 49 C.F.R. subtitle B, chapter I. These regulations include the prohibition of shipping fireworks without authorization, 49 C.F.R. § 173.51, or in a manner inconsistent with the agency's regulations for the packaging, transportation, and storage of fireworks. 49 C.F.R. § 171.1. PHMSA is authorized to inspect parties engaged in shipments. 49 C.F.R. §§ 107.305, § 107.709(d)(5).

The regulations further authorize administrative enforcement actions. Such actions are typically preceded by a Notice of Probable Violation (NOPV), which identifies the

factual and legal bases for a violation and sets forth a proposed civil penalty. The recipient of an NOPV can challenge these findings by either pursuing informal adjudication, or seeking a formal hearing before an administrative law judge. 49 C.F.R. §§ 107.317, 107.319.

Under an informal adjudication, PHMSA's Office of Chief Counsel may either dismiss the Notice, or direct compliance (and may assess a civil penalty). 49 C.F.R. § 107.317(d). If a formal hearing is requested, an administrative law judge resolves the challenge. Under either proceeding, a respondent faced with an unfavorable result may appeal to the PHMSA Administrator, whose decision represents the final agency action. 49 C.F.R. § 107.325. Under 49 U.S.C. § 5127(a), a Respondent has 60 days to then seek judicial review from the District of Columbia Circuit Court of Appeals.

Following an inspection, the regulations authorize PHMSA to suspend or terminate shipment rights. 49 C.F.R. §107.713(b). If the agency seeks to suspend an appproval, it issues a notice of the proposed action and must allow the shipper an opportunity to respond. After the shipment approval holder responds, the agency may cancel the action, or proceed to modify, suspend, or terminate the approvals. 49 C.F.R. § 107.713(c)(2).

The approval holder may seek reconsideration or appeal to the Administrator. 49 C.F.R. § 107.715, 717. The holder may subsequently seek judicial review purusuant to § 5127.

GWE sells and transports fireworks, and is thus subject to PHMSA oversight. In April 2010, PHMSA conducted a fitness inspection of GWE. PHMSA later issued an NOPV and proposed $94,000 in civil penalties.

GWE contested the NOPV. On July 30, 2012, PHMSA's Chief Counsel issued an order assessing $25,000 in civil penalties, finding that GWE had offered transportation in commerce fireworks (Class 1 explosive materials) which were forbidden for transportation in commerce without PHMSA approval, thereby violating 49 C.F.R. §§ 171.2(a), 173.22, 173.54, and 173.56.

GWE subsequently appealed. On July 25, 2013, the agency's Acting Chief Safety Officer issued a Decision on Appeal, upholding the civil penalties. The agency determined that GWE's allegations of misconduct by the investigators, which occurred after the NOPV was issued, were irrelevant. The agency also found that GWE had failed to show any facts mitigating culpability or indicating it was unable to pay the penalty. GWE did not seek judicial review of this decision.

As a result of the April 2010 inspection, on July 9, 2010, PHMSA moved to suspend and terminate GWE's approvals. On September 27, 2012, the show cause action was closed without further action, and GWE was never determined to be unfit.

In October, 2011, PHMSA conducted another fitness inspection, which led to a second NOPV, with proposed civil penalties of $16,2000, issued March 21, 2013.  GWE contested the Notice. The agency's Chief Counsel, issued an Order assessing reduced civil penalties of $4000 on May 12, 2014. GWE appealed from this decision on May 29, 2014.The PHMSA's Chief Safety Officer is now reviewing the second enforcement action.

On March 27, 2013, GWE and Garrett along with Dennis Garrett, Susan Garrett, and Jason Garrett, submitted a joint administrative tort claim alleging injury and damages

4

arising out of the second enforcement action.

On May 6, 2013, PHMSA notified plaintiffs' counsel that the administrative claim was defective because it was filed on behalf of more than one claimant. PHMSA asked counsel to submit separate claims for each claimant, and to include medical documentation to substantiate personal injuries.

Garrett subsequently submitted his individual administrative tort claim on June 13, 2013. On July 22, 2013, the agency acknowledged receiving the claim and stated that it would not take any further action on the March 27, 2013 claim. Other than Garrett, none of the parties to the March 27 claim, including GWE, ever submitted any individual administrative claim, and none filed any court action alleging that the May 6, 2013, or July 22, 2013, letters were denials of their claims.

On December 12, 2013, PHMSA denied Garrett's administrative claim for failing to present compensable claims and for failing to present medical documentation to support his claim for personal injury.

GWE and Garrett filed the present lawsuit on June 10, 2014. They amended their Complaint on September 9, 2014, to add *Bivens* claims against individual agency employees. Against the Department of Transportation and PHMSA, the plaintiffs allege entrapment, negligence, abuse of process, negligent and infliction of emotional distress, unlawful search, and malicious prosecution. In the First Amended Complaint, the plaintiffs allege that defendants Rastetter, Pollard, and Turner, in their individual capacities, intentionally inflicted emotional distress, engaged in malicious prosecution, abuse of process, and violated

Case 2:14-cv-02281-JTM-KMH   Document 32   Filed 03/06/15   Page 6 of 18

their rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The United States is now substituted as the proper defendant for the non-constitutional claims against Rastetter, Pollard and Turner.

*Conclusions of Law*

The government argues that the court lacks subject matter jurisdiction over GWE's FTCA claim, because the June 13, 2013 administrative complaint was advanced only by Garrett, not the company. Second, it argues that Garrett's claim is time-barred to the extent that it seeks recovery for any events occurring before June 13, 2011. The court finds that GWE failed to adequately present its administrative claim for review, and accordingly grants the motion to dismiss the claims now brought on behalf of the company.

The first administrative complaint, filed on March 27, 2013, was brought on behalf of multiple claimants, including Eric Garrett and GWE. After the agency indicated that the claim was flawed precisely because it combined the claims of multiple parties, Garrett submitted the second administrative claim in his own name alone. The administrative claim was accompanied by a Standard Form 95 "CLAIM FOR DAMAGE, INJURY, OR DEATH," which lists as "claimant" only "ERIC GARRETT." Under "BASIS OF CLAIM," the complaint alleges that "the claimant" — i.e., Eric Garrett — "seeks damages *for personal injuries* suffered in connection with misconduct arising from the investigation of Garrett's Worldwide Enterprises." (Dkt. 9-8, at 3 (emphasis added)).

In their response, the plaintiffs stress that use of the SF-95 form is not formally

required by 28 C.F.R. § 14.2.  They also note that the cover letter attached to the form identifies the counsel submitting the form as attorneys for both Eric Garrett and GWE.

The court finds that, in context, the administrative complaint does not fairly suggest a claim for relief by GWE. GWE was indeed a claimant *in the earlier, and abandoned, first administrative complaint*. And while an SF-95 Form is an optional form of presenting an administrative complaint, the plaintiffs chose this option, and are bound to the explicit representations made within it. As noted earlier, the form expressly states that Eric Garrett is the sole claimant in the second administrative complaint, and he is seeking "personal injuries" arising from the investigation.

GWE failed to give the agency adequate notice of an administrative claim. It cannot paper over this failure by citing the attorney's identification of their clients as Garrett and GWE in order to infer that the second complaint was also a multiple claimant complaint. The agency had recently denied the first administrative complaint precisely because it tried to present the claims of multiple claimants. The agency stressed that on March 27, 2013, "you submitted **one** SF-95 form for **five** claimants." (Dkt. 9-6, at 1) (emphasis in original). The agency clearly warned that it would consider claims on an individual basis:

> Please note that the instructions on the second page of the SF 95 form state: "**If the incident involves more than one claimant, each claim should submit a separate claim form**." We therefore need a separate claim form for each of the five claimants in order to review the information as it pertains to each claimant.

(*Id.*) (emphasis in original).

Rather than protesting this denial or expressing any disagreement with it, Eric

7

Garrett submitted the second administrative complaint in his name only, for his "personal injuries." Moreover, Garrett greatly reduced the damages sought, $15 million, one quarter of the $60 million sought in the earlier complaint putatively brought by GWE and other members of the Garrett family. Given the agency's clear representation that it would consider claims only on an individualized basis, based on separate claim forms, and the clear restriction of the June 13 claim to the "personal injuries" of Eric Garrett, the agency could and did reasonably conclude that the claims of the other four claimants were abandoned. The agency was entitled reasonable notice of the nature of the claims asserted. *See Haceesa v. United States*, 309 F.3d 722, 734 (10th Cir. 2002).

The court also dismisses Garrett's complaint to the extent that it seeks recovery for injuries occurring more than two years before the June 13, 2013 administrative complaint. Garrett implicitly concedes the government's argument, by observing that "all of the claims pled here rely on Defendants' post June 12, 2011 [conduct], although conduct prior to that date is relevant evidence to establish Defendants' motivation for its post-June 12, 2011 conduct."

The June 13, 2013 administrative claim is the only basis for this court's jurisdiction cited in the Complaint in the present action. Accordingly, the court dismisses any claims advanced by GWE, which failed to present any administrative complaint for the DOT's review, and any claims by Eric Garrett for personal injury or emotional distress which are predicated on the first inspection of GWE.

The court further finds that the remaining FTCA claims should be dismissed because

the defendants were engaged in "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This provision, known as the discretionary function exception, recognizes that the FTCA's waiver of sovereign immunity is inapplicable when the challenged governmental conduct is the product of governmental policy decisions. "If the discretionary function exception applies to the challenged governmental conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit." *Domme v. United States*, 61 F.3d 787, 788 (10th Cir. 1995). "The basis for the discretionary function exception was Congress' desire to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Berkovitz v. United States*, 486 U.S. 531, 536-37 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).

In determining whether governmental conduct falls within the discretionary function exception, the court first must determine if federal law (through statute, regulation or policy) creates a specific mandatory regime under which government agents must operate. If the conduct is not mandatory, but "involves 'a matter of choice' or judgment, then the action is discretionary, and [the court proceeds] to the second prong of [the] analysis." *Aragorn v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) (quoting *Berkovitz*, 486 U.S. at 536). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed

that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 324 (1991). At the second stage, the court must determine if the action challenged is the type of conduct the exception is intended to protect. *Aragorn*, 146 F.3d at 826. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert,* 499 U.S. at 325.

The challenged conduct here falls within the discretionary function and dismissal is appropriate. The plaintiffs have pointed to no federal statute or rule mandating specific conduct by the DOT's agents. And their contention that the agents acted pretextually, with the subjective intent to retaliate against GWE and Garrett, is insufficient as a matter of law.

> Consistent with Congress's instruction that the discretionary function exception applies even when "the discretion involved be abused," 28 U.S.C. 2680(a), we may entertain a claim only when the plaintiff can demonstrate that the "challenged actions are not *the kind of conduct* that can be said to be grounded in the policy of the regulatory regime," [*United States v.*] *Gaubert*, 499 U.S. [315,] 325 [(1991)] (emphasis added). That is, we do not inquire into the intent of the government supervisor when making a specific personnel decision, *Harrell* [*v. United States*], 443 F.3d. [1231,] 1235 [(10th Cir. 2006)], and neither do we ask "whether policy analysis is the *actual* reason for the decision in question." *Duke v. Dept. of Agric.*, 131 F.3d 1407, 1413 (10th Cir.1997) (Briscoe, J., concurring in part and dissenting in part) (emphasis added). Instead, we operate at a higher level of generality than plaintiffs argue for, asking categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns.

*Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008).

Here plaintiffs advance an argument similar to that rejected in *Sydnes* – that the agency's action was not grounded in actual policy concerns, and the agents used the

10

investigations as a pretext for retaliation. As noted above, the subjective intent of the federal agent is irrelevant. The decision to monitor, investigate, and enforce regulations governing the shipment of hazardous materials is conduct which "involves an element of choice and is the kind of decision that implicates policy concerns relating to accomplishing the agency's mission." *Sydnes*, 523 F.3d at 1187.

Even if the court were to find that Eric Garrett's FTCA claims fell outside the discretionary function exception, dismissal would remain appropriate for the plaintiffs' claims of entrapment, abuse of process, malicious prosecution, negligence, and unlawful search. The FTCA also exempts from the waiver of sovereign immunity "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).

This exception for intentional torts explicitly applies to a plaintiff's claims for abuse of process or malicious prosecution, *see Wilson v. United States*, 959 F.2d 12, 14-15 (2d Cir. 1992), unless the persons responsible for the misconduct were "investigative or law enforcement officers." 28 U.S.C. § 2680(h). The statute explicitly defines such officers as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

The DOT agents involved in the present action do not have such broad law enforcement powers. Rather, they have limited investigative powers relating to the shipment of hazardous materials. *See* 49 U.S.C. § 5121. They do not have the authority to

11

execute search warrants, seize evidence, or conduct arrests. The plaintiffs respond by stressing that the agents are issued identification badges, but such forms of identification are common among modern employees and hardly transforms the essentially civilian and administrative nature of the DOT agents into law enforcement officers. Plaintiffs cite no authority in support of their position. In contrast, courts have had little difficulty in concluding that the FTCA did not apply to the actions of similar federal civilian officers. *See, e.g., Matsko v. United States,* 372 F.3d 556 (3d Cir. 2004) (alleged assault by Mine Safety and Health Administration inspector was not within FTCA "because employees of administrative agencies, no matter what investigative conduct they are involved in, do not come within the § 2680(h) exception");  *EEOC v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1007-08 (5th Cir. 1980) (EEOC civil investigative agents with limited rights to access evidence are not "investigative or law enforcement officers' within the meaning of § 2680(h)); *Weinraub v. United States,* 927 F. Supp.2d 258 (E.D.N.C. 2012) (same for Transportation Security Administration flight screeners).

This intentional torts exception also applies to plaintiffs' claims of entrapment and negligence. Although couched as "negligence," the essence of plaintiff's claim is that the agents caused them to violate federal hazardous materials regulations by supplying them with false advice. That is, the agents misrepresented how they should comply with the regulations, the plaintiffs relied on this advice, and in doing so innocently violated federal law. But, for purposes of the FTCA, there is no waiver of sovereign immunity based upon acts of "misrepresentation," which is understood as "the communication of misinformation

on which the recipient relies." *Block v. Neal*, 460 U.S. 289, 296 (1983). The exception applies to claims based on reliance of inaccurate information, even if "negligence underlies the inaccurate representation." *United States v. Shearer*, 473 U.S. 52, 56 (1985) (citing *United States v. Neustadt*, 366 U.S. 696 (1961)). *See Block*, 460 U.S. at 297 (the exception "relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements").

In addition, plaintiffs' claims of entrapment, unlawful search, and negligent advice are precluded by the "private analogue" exception to the FTCA. The FTCA waives sovereign immunity only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Courts interpret this provision to mean that the federal government retains sovereign immunity where there is no comparable action against a private defendant. That is, the FTCA applies only under "circumstances that would bring private liability into existence." *C.P. Chemical v. United States*, 810 F.2d 34, 37 (2d Cir. 1987). "[T]he FTCA's waiver of sovereign immunity is limited to conduct for which a private person could be held liable under state tort law." *United States v. Agronics, Inc.*, 164 F.3d 1343, 1346 (10th Cir. 1999). In *Agronics*, the Tenth Circuit recognized that "federal statutory duties regarding peculiarly administrative acts generally involve 'a type of conduct that private persons could not engage in, and hence could not be liable for under local law.'" *Id.* (citing *Sea Air Shuttle v. United States*, 112 F.3d 536, 537 (1st Cir. 1997).

Here, plaintiffs' claims of entrapment or unlawful search presuppose governmental

authority; there is no analogue for a similar action against a private defendant. The entrapment alleged by plaintiffs rests on the administrative and governmental power of the DOT, there is no similar comparable civil action against a private party for entrapment. Under Kansas law, entrapment is a *defense* to a criminal prosecution, not a separate private civil action. K.S.A. 21-5208. *See State v. Martin*, No. 109,877 (2014 WL 3843093, *3 (Kan. Ct. App. Aug. 1, 2014) (citing statute as "condifying entrapment as a defense to criminal charge"). Similarly, the claim that the DOT agents gave faulty advice about how to comply with administrative regulations rests upon the agents' governmental authority. Plaintiffs have pointed to no analogue action against a private defendant for inaccurate instruction as to regulatory compliance. Finally, the plaintiffs' claims that the government violated their constitutional rights are not cognizable under the statute. The FTCA does not waive sovereign immunity for such claims, because "constitutional torts are not actionable under the FTCA." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (citing *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994)).

The government also seeks dismissal of plaintiffs' *Bivens* claims against the individual agents. In *Bivens*, the Supreme Court recognized that persons whose constitutional rights have been violated by federal officers may bring a claim under 28 U.S.C. § 1331. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 396 (1971). The government first argues that GWE, as a corporation, cannot assert such a claim. Second, it argues that Eric Garrett has failed to demonstrate that a *Bivens* action is warranted under the circumstances of the case.

The government stresses that it has found no case explicitly recognizing a *Bivens* claim by a corporation, and plaintiffs' response fails to identify any such authority. However, the court need not resolve the issue, as it finds that the Bivens action, whether asserted by Eric Garrett or GWE, should be dismissed.

In determining whether to recognize a *Bivens* claim, the court conducts a two-step inquiry.

> First, "[t]here is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie [v. Robbins]*, 551 U.S. [537,] 550 [(2007)]. Second, "even in the absence of an alternative, a *Bivens* remedy is a subject of judgment;" and therefore "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed ... to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Id.*

*Ingram v. Faruque*, 728 F.3d 1239, 1244 (10th Cir. 2013).

The existence of alternative relief counsels against recognition of a *Bivens* action "[s]o long as the plaintiff ha[s] an avenue for some redress" *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001), even if the redress is limited in nature and "do[es] not provide complete relief for the plaintiff." *Bush v. Lucas*, 462 U.S. 367, 388 (1983). The Supreme Court in *Bush* declined to recognize a *Bivens* claim asserting a First Amendment violation based upon an employment relationship given "the congressionally installed administrative system [which] 'provide[d] meaningful remedies.'" *Peoples v. CCA Detention Ctrs.*, 422 F.3d 1090, 1099 (10th Cir. 2005) (quoting *Bush*, 462 U.S. at 388). Courts defer to congressional intent in creating alternative remedies because "Congress is in a better position to decide

whether or not the public interest would be served by creating [a *Bivens* remedy]." *Bush*, 462 U.S. at 426. *See also Schweicker v. Chilicky*, 487 U.S. 412, 424 (1988).

Courts have exercised carefully the discretion granted in *Bivens*, recognizing additional claims in very few cases.

> Since *Bivens*, the Supreme Court has "recognized two more nonstatutory damages remedies, the first for employment discrimination in violation of the Due Process Clause, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the second for an Eighth Amendment violation by prison officials, *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)," but "in most instances[, the Court has] found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 127 S.Ct. 2588, 2597, 168 L.Ed.2d 389 (2007). Indeed, in its "more recent decisions[, the Supreme Court has] responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Chilicky*, 487 U.S. at 421, 108 S.Ct. 2460.

*Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008).

Congress has explicitly adopted a mechanism for the review of DOT and PHMSA actions by means of the Administrative Procedures Act and 49 U.S.C. § 5127. The plaintiffs stress, correctly, that review under the APA does not include the ability to obtain monetary damages. But, as the Supreme Court has concluded, an alternative means for review is not rendered meaningless merely because it does not include the chance to win monetary damages. *See Schweicker v. Chilicky*, 487 U.S. 412, 424 (1988) (declining to recognize *Bivens* action based upon denial of social security benefits, even though Act "makes no provision for remedies in money damages").

The court concludes that an alternative process exists for protecting plaintiffs from abusive administrative actions by PHMSA agents. "'[C]ourts must withhold their power to

16

fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies.'" *Hill v. Department of the Air Force*, 884 F.2d 1318, 1321 (10th Cir. 1989) (quoting *Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988)). Here, Congress has provided specific procedures for persons subjected to NOPV determinations to obtain meaningful review. The plaintiffs' claims in the present action are directly tied to the NOPVs issue in the wake of the two inspections of GWE, and plaintiffs may obtain review of theses assessments through the APA and 49 U.S.C. § 5127. These detailed procedures for administrative review, and subsequent judicial review by the Court of Appeals for the District of Columbia represent a congressional determination as to the remedy for "a person adversely affected or aggrieved by a final action of the Secretary." 42 U.S.C. § 5127(a).[1]

The court finds that it lacks subject matter jurisdiction to hear the plaintiffs' claims, which are hereby dismissed.

---

[1] The government also argues that specific counts of the Complaint should be dismissed for failure to state a claim under Fed.R.Civ.Pr. 12(b)(6) (Dkt. 21, at 30-36), that the action against the federal government is further barred by the exclusive jurisdiction of the Court of Appeals to review adverse decisions under the APA, (*d.* at 28-30), and that the individual defendants are protected by qualified immunity. (*Id.* at 38-47). And, given the plaintiffs' statement in their Response that they became aware of the alleged retaliatory motive in April 2010, the government further argues in its Reply that the *Bivens* action is barred by the state of limitations. *See Logan v. United States*, 272 F. Supp.2d 1182, 1185 (D. Kan. 2003) (recognizing two-year limitations period for *Bivens* actions). Given the court's other findings, it need not resolve these additional arguments advanced by the government.

IT IS ACCORDINGLY ORDERED this 6th day of March, 2015, that the defendants' Motion to Dismiss (Dkt. 20) is hereby granted.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE